John J. FLYNN and J. H.
Thomas, Appellants.

v.

COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Appellee.

No. 00–1457.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 28, 2001.

Decided Oct. 30, 2001.

Michael S. Gordon argued the cause and filed the briefs for appellants.

Steven W. Parks, Attorney, United States Department of Justice, argued the cause for appellee. With him on the brief was Kenneth L. Greene, Attorney. Ann W. Muoio, Attorney, entered an appearance.

Before: EDWARDS, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Section 7476 of the Internal Revenue Code ("I.R.C.") allows certain qualified employees to bring an action in the Tax Court for a declaratory judgment to challenge a determination that their employers' retirement plan qualifies for favorable tax treatment. I.R.C. § 7476 (1994). Pursuant to the statute's express delegation of authority, the Secretary of the Treasury promulgated regulations determining which employees would be permitted to utilize the declaratory judgment remedy. See Treas. Reg. § 1.7476–1(b) (as amended in 1988). Appellants sought to use § 7476 to challenge the Internal Revenue Service's ("IRS") determination that the amended retirement plan of their former employer continued to qualify for favorable tax treatment. The regulations, however, grant standing to use the declaratory judgment remedy only to current employees, not former employees like appellants. See id. The United States Tax Court therefore dismissed appellants' action for a declaratory judgment and upheld the regulations denying standing to former employees. See Flynn v. Comm'r, 80 T.C.M. (CCH) 91, 2000 WL 1036367 (2000).

On appeal, appellants make three arguments. First, they argue that § 7476 impermissibly delegates authority to the Secretary to determine which employees may use the declaratory judgment remedy, without giving the Secretary guidelines for making that determination, in violation of the constitutional nondelegation doctrine. Because appellants did not raise this argument at the Tax Court, we decline to address it now. Second, appellants renew

their challenge to the validity of Treas. Reg. § 1.7476–1(b). We find that the Tax Court correctly upheld the regulation as a reasonable construction of the statutory language. Finally, appellants argue that their employer somehow conferred standing on them by mailing them a "notice to interested parties" informing them that it was seeking a determination that the amended plan would continue to receive favorable tax treatment. It is clear, however, that the rules governing the content of notices to interested parties do not operate to confer standing on appellants. We accordingly affirm the judgment of the Tax Court.

## I. BACKGROUND

### A. The § 7476 Declaratory Judgment Provision and the Applicable Regulations

In 1974, Congress enacted the Employee Retirement Income Security Act ("ERISA"), sections of which were codified as part of the I.R.C. Pub.L. No. 93–406, 88 Stat. 829 (codified as amended at 29 U.S.C. §§ 1001–1461 and scattered sections of the I.R.C., 26 U.S.C. (1994 & Supp.1999)). Many of its provisions set forth requirements to which retirement and other benefit plans must conform. Among these requirements are the so-called "backloading rules," mathematical formulae designed to prevent employers from providing rates of benefit accrual for older or more experienced workers that are excessive in relation to the rates of accrual for younger workers. *See* I.R.C. §§ 401(a)(7) (providing that to qualify under ERISA, a trust must satisfy the requirements of § 411); 411(b)(1) (setting forth various mathematical formulae that plans may use) (1994). When retirement plans comply with ERISA's requirements, they enjoy favorable tax treatment. ERISA is a remedial statute, whose express purpose is to protect, *inter alia*, "the

interests of participants in private pension plans and their beneficiaries." 29 U.S.C. § 1001(c) (1994); *Rettig v. Pension Benefit Guar. Corp.*, 744 F.2d 133, 155 n. 54 (D.C.Cir.1984) (discussing Congress' remedial purpose in enacting ERISA).

Internal Revenue Code § 7476 gives the Tax Court jurisdiction to issue a declaration about a retirement plan's qualification for favorable tax treatment when there is a controversy involving the Secretary of the Treasury's determination that a plan qualifies or continues to qualify for such treatment. I.R.C. § 7476(a). Any employee who qualifies as an "interested party" under regulations prescribed by the Secretary may petition the Tax Court for such a declaration. *Id.* The effect of the provision is to allow certain employees and other interested parties to act as watchdogs: when a plan or an amendment to a plan hurts those employees' interests by failing to conform to ERISA's requirements, those employees can seek a declaration preventing the plan from receiving a determination that will ensure favorable tax status. Employers and plan administrators are also interested parties who can use the declaratory judgment remedy provided in § 7476. *Id.*

The regulations authorized by § 7476(b)(1) define several categories of *present* employees as "interested parties" who can challenge plan determinations in most situations, including cases involving certain amendments to plans. Treas. Reg. §§ 1.7476–1(b)(1)(i), (ii), (2)(ii), (3)(ii), (4), (5). The only instance in which *former* employees are included as interested parties is in the case of plan terminations. *Id.* § 1.7476–1(b)(5). When an employer wishes to terminate a retirement plan that covers former employees with vested benefits under the plan, those former employees and all beneficiaries of deceased former employees currently receiving ben-

efits under that plan have standing to seek a declaratory judgment. *Id.*

Additional regulations require the party applying for qualified status to notify the interested parties referred to in § 7476(b)(1) of the application for a determination of qualified status. Treas. Reg. §§ 1.7476–1(a)(1), 1.7476–2. The rules governing the content and timing of notice to interested parties are set forth at 26 C.F.R. § 601.201 (2001). Part 601 of 26 C.F.R., entitled "Statement of Procedural Rules," consists of rules issued by the Commissioner, rather than by the Secretary, pursuant to his power to promulgate rules "for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." 5 U.S.C. § 301 (1994). Section 601.201(*o*)(3)(xiv) requires, in cases in which plans apply for determinations of their qualification for special tax status, that notice of the application be given to all interested parties "in the manner set forth in the regulations under section 7476." 26 C.F.R. § 601.201(*o*)(3)(xiv). Section 601.201(*o*)(3)(xvi) requires the notice to contain, *inter alia,* a statement that "any person to whom the notice is addressed is entitled to submit ... a comment on the question of whether the plan meets the requirements for qualification." *Id.* § 601.201(*o*)(3)(xvi)(*g*).

## B. *Appellants' Challenge to the IRS's Favorable Determination*

Appellants are former employees of the International Union of Operating Engineers ("the Union"), which established the International Headquarters Pension and Beneficiaries Plan of the International Union of Operating Engineers ("the plan") in 1947. *Flynn,* 80 T.C.M. (CCH) at 92. Around January 6, 1999, the Union filed an application with the IRS, seeking a determination that the pension plan would con-

tinue to qualify for favorable tax treatment after the adoption of certain amendments. *See* Application for Determination for Employee Benefit Plan, *reprinted in* Deferred Appendix ("App.") 35. The Union also sent appellants a notice on Union letterhead, entitled "Notice to Interested Parties. Notice to all participants of application for determination of the International Headquarters Pension and Beneficiaries Plan of the International Union of Operating Engineers." Notice to Interested Parties, *reprinted in* App. 13. The notice explained that the Union was applying to the IRS for a determination that its amended pension plan was eligible for tax-qualified status. *Id.* It also stated that the recipient had the right to submit comments to the IRS as to whether the plan met the qualification requirements under the I.R.C. *Id.*

Appellants responded to the notice by submitting critical comments to the IRS. They argued that while the amended plan complied with ERISA's backloading requirements, the old version of the plan — which governed appellants' benefits — did not. The plan was supposed to satisfy one of the statutorily available mathematical formulae, known as the "3–percent method." *See* I.R.C. § 411(b)(1)(A). That method requires that the accrued benefit to which each worker is entitled on leaving the employer is not less than 3% of the normal retirement benefit to which that worker would be entitled if he or she began participation in the plan at the earliest possible entry age and served continuously until the earlier of age 65 or normal retirement age, multiplied by the number of years of that worker's participation in the plan. *Id.* According to appellants, the amended plan satisfied the 3% rule, because it allowed vested employees with less than 20 years of service to accrue benefits at the rate of 4% of final pay for each year of service. Preliminary Written

Comments of John J. Flynn ... and James H. Thomas ¶ 6, *reprinted in* App. 15–19. Appellants alleged that the version governing their benefits, however, had only allowed them to accrue benefits at a rate of 2.25% of final pay, in violation of the backloading requirement. Even worse, according to appellants, the amended plan apparently did not go back and correct the alleged violation with respect to former employees. *Id.* As a result, appellants argued that they were "vitally affected by the potential ... violations committed by the Plan." *Id.*

The IRS issued a favorable determination to the Union regarding the amended plan, apparently without addressing appellants' comments. Letter from IRS to Int'l Union of Operating Eng'rs (Oct. 8, 1999), *reprinted in* App. 37–38. Appellants responded by filing a petition in the Tax Court seeking a declaration, under I.R.C. § 7476, that the plan was not entitled to continuing qualification because it violated the I.R.C. Petition (T.C. Dec. 2, 1999), *reprinted in* App. 3–8. The IRS moved to dismiss the petition, arguing, *inter alia,* that appellants lacked standing because they were former employees and therefore not interested parties. Motion to Dismiss for Lack of Jurisdiction, Docket No. 18090–99R (T.C. Feb. 4, 2000), *reprinted in* App. 23–32. Appellants, in opposing the motion to dismiss, argued that they qualified as interested parties by virtue of the fact that the Union had sent them a notice addressed to interested parties or, alternatively, because the regulations excluding former employees were arbitrary and capricious. Notice of Petitioners' Opposition to Respondent's Motion to Dismiss, Docket No. 18090–99R (T.C. Feb. 29, 2000), *reprinted in* App. 39–57.

The Tax Court dismissed the petition and held that appellants lacked standing and were not interested parties. Order of Dismissal for Lack of Jurisdiction, Docket

No. 18090–99R (T.C. July 31, 2000), *reprinted in* App. 67; *Flynn,* 80 T.C.M. (CCH) at 93–94. The court held that under Treas. Reg. § 1.7476–1(b), only present employees qualified as interested parties. *Flynn,* 80 T.C.M. (CCH) at 93. Contrary to appellants' argument, the Union could not confer jurisdiction on the Tax Court by sending appellants a notice. *Id.* The Tax Court also upheld the regulations under § 7476 as valid legislative regulations. *Id.* at 93–94. Appellants appealed the decision of the Tax Court.

## II. Discussion

Our jurisdiction to review the decision of the Tax Court derives from I.R.C. § 7482(a)(1) (1994). We review the legal determinations of the Tax Court *de novo. ASA Investerings P'ship v. Comm'r,* 201 F.3d 505, 511 (D.C.Cir.), *cert. denied,* 531 U.S. 871, 121 S.Ct. 171, 148 L.Ed.2d 117 (2000).

### A. The Nondelegation Argument

■ On appeal, appellants raise the argument, not raised at the Tax Court, that § 7476 violates the Constitution's nondelegation doctrine. Having failed even to mention any constitutional claim below, appellants now argue that § 7476 impermissibly delegates to the Secretary of the Treasury the authority to determine which employees are interested parties, without providing sufficient guidance to the Secretary as to how to make that determination. Appellee argues in response that because appellants failed to raise the issue at the Tax Court, this court should not now consider it. Appellee also argues that appellants' nondelegation argument lacks merit. We agree with appellee on the former point and therefore decline to address the latter.

■ Generally, an argument not made in the lower tribunal is deemed forfeited

and will not be entertained absent "exceptional circumstances." *Marymount Hosp., Inc. v. Shalala,* 19 F.3d 658, 663 (D.C.Cir. 1994) (citing *Roosevelt v. E.I. Du Pont de Nemours & Co.,* 958 F.2d 416, 419 n. 5 (D.C.Cir.1992)). This rule promotes efficiency and finality in the administration of justice. *See Johnston v. Reily,* 160 F.2d 249, 250 (D.C.Cir.1947). The rule is not absolute, and courts of appeals have discretion to address issues raised for the first time on appeal. *Roosevelt v. E.I. Du Pont de Nemours & Co.,* 958 F.2d 416, 419 n. 5 (D.C.Cir.1992) (citing *Hormel v. Helvering,* 312 U.S. 552, 555–59, 61 S.Ct. 719, 85 L.Ed. 1037 (1941)). We generally exercise that discretion, however, only in exceptional circumstances, as, for example, in cases involving uncertainty in the law; novel, important, and recurring questions of federal law; intervening change in the law; and extraordinary situations with the potential for miscarriages of justice. *Id.* (citations omitted).

There are no exceptional circumstances in this case. Appellants argue that this court should consider its nondelegation argument because it is vital to the proper functioning of § 7476 as a mechanism for channeling the grievances of plan participants regarding tax qualification decisions that affect their benefits. Reply Br. for Appellants at 9. This argument is not the least bit compelling. Under the existing regulatory regime, employees may challenge all plan determinations and former employees and other beneficiaries may challenge determinations in cases involving plan terminations. This scheme makes sense, in part because it is undisputed that former employees rarely have reason to challenge determinations regarding plan amendments, since amendments usually affect only current and future employees. *See id.* at 16. Furthermore, former employees are not without a remedy in circumstances when they seek to challenge plan amendments, for they may assert their claims through a civil action under ERISA § 502(a), 29 U.S.C. § 1132(a) (1994 & Supp. V 1999). We are unconvinced, therefore, that the issue now raised by appellants is either sufficiently important or fraught with sufficient risk of a miscarriage of justice to warrant deviation from our general refusal to address issues raised for the first time on appeal.

## B. The "Interested Parties" Regulations

■ In I.R.C. § 7476, Congress expressly delegated authority to the Secretary of the Treasury "to elucidate a specific provision of the statute by regulation." *Chevron USA Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The legislative regulation promulgated pursuant to that explicit grant of authority is accorded controlling weight. As the Supreme Court recently noted in *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 2171, 150 L.Ed.2d 292 (2001):

> When Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation," *Chevron,* 467 U.S., at 843–844, 104 S.Ct. 2778, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute.

*See also Arent v. Shalala,* 70 F.3d 610, 616 (D.C.Cir.1995) (where there is no question that an agency had authority to issue regulations under a statute, the only issue is whether the agency's discharge of its authority is reasonable). There is no doubt here that the Secretary promulgated a legislative regulation pursuant to an express delegation of authority from Congress. There are no procedural, substantive, or statutory infirmities denigrating the regu-

lation. Therefore, under *Mead,* the regulation is binding.

■ By its plain language, the statute limits standing to "an employee who has qualified under regulations prescribed by the Secretary as an interested party." I.R.C. § 7476(b)(1). As evidenced by this wording, the statute contemplates that some employees will qualify under the regulations, while others will not. Otherwise, there would be no need for the Secretary to prescribe regulations setting forth the categories of qualified employees.

In their briefs, the parties quibble over the significance of the legislative history underlying the statute. Appellants cite a report of a committee of the House of Representatives suggesting that plan "participants" will be able to bring an action, *see* H.R.REP. No. 93–779, at 106 (1974) (Report of the Committee on Ways and Means), while appellee counters that the final Conference Report speaks only of "employees," *see* H.R. CONF. REP. No. 93–1280, at 331 (1974). This debate is much ado about nothing. The statute's plain language clearly shows that Congress did not intend for every participant to have standing under § 7476. The only remaining question is whether it was reasonable for the Secretary to exclude vested former employees from qualification in situations involving plan amendments.

Appellants do not deny that the statute authorizes the Secretary to bar some employees from access to the declaratory judgment remedy, but they argue that it was unreasonable to exclude *all* former employees automatically. They suggest that the regulations should be revised to grant standing to any plan participant who can demonstrate that his interests may be adversely affected by the grant or denial to the plan of a favorable qualification determination. Br. for Appellants at 27. Appellants may have a point in suggesting that the regulations would have been better written to grant standing to any participant with an interest at stake, rather than granting standing based on a categorical distinction between current and former employees. This does not mean, however, that the existing regulations are arbitrary and unreasonable.

Appellants argue that the regulatory scheme is irrational, because some former employees with no real stake in the termination of a plan are nonetheless allowed to challenge it, while all former employees are barred from challenging plan amendments even when approval could adversely affect their benefits. This example of alleged regulatory irrationality is hardly convincing, for it focuses solely on the treatment of different categories of former employees, not on the treatment of former versus current employees. The example therefore has little relevance to the instant case. Furthermore, the fact that some former employees may be able to challenge determinations relating to plan terminations in which they no longer have a stake does not mean that it is irrational to *exclude* former employees where plan amendments are concerned. Put another way, the fact that the rule for plan terminations may be overinclusive does not necessarily show that the rule for plan amendments is unreasonably underinclusive.

In any event, the fact that the division between current and former employees does not map perfectly onto the categories of plan amendments and plan terminations does not render the regulatory scheme irrational. First, appellants do not dispute that former employees ordinarily are not affected by amendments made to a plan after they terminate their employment. *See* Reply Br. for Appellants at 16. They also acknowledge that regulatory simplicity and ease of administration may have been among the Secretary's reasonable objectives in drafting the regulations. Br.

for Appellants at 27. We find nothing in the statute requiring the Secretary to adopt an individualized, case-by-case approach to standing. Nor does the statute rule out a categorical approach to standing that corresponds roughly to categories of employees whose interests are affected by plan terminations and amendments respectively. If former employees are only rarely affected by plan amendments made after their employment is over, it is eminently reasonable to limit standing to current employees, whose benefits will almost always be affected by amendments.

Second, the regulatory distinction between current and former employees does not leave the latter group entirely without recourse when a plan amendment arguably affects their benefits. As appellants recognize, they and other former employees in their position can seek redress by filing civil actions under ERISA § 502(a), 29 U.S.C. § 1132(a). Indeed, plan participants have had some success bringing civil actions in district court to challenge violations of the backloading rules. *See, e.g., Carollo v. Cement & Concrete Workers Dist. Council Pension Plan,* 964 F.Supp. 677, 682–84 (E.D.N.Y.1997). In other words, it is not unreasonable for the Secretary to issue regulations that leave former employees with one remedy, rather than two.

In sum, appellants' challenge to the regulations fails because they are unable to demonstrate that the basic division between current and former employees in the plan amendment context is arbitrary and capricious. The Secretary's regulations need not perfectly accommodate all anomalous situations in order to be reasonable under the statute, particularly when another remedy is available to those who are excluded. Because the regulations are plainly consistent with the statutory delegation to the Secretary and are based on a reasonable division between present and former employees, they are valid.

## C. The "Notice" Regulations

■ Appellants' final argument is that, although they are not interested parties under the regulations promulgated pursuant to § 7476, the Union conferred standing on them by mailing them a notice to interested parties. This argument is premised on the requirement in 26 C.F.R. § 601.201(*o*)(3)(xvi)(*g*) that the notice to interested parties contain a statement that any person to whom the notice is addressed is entitled to submit comments. Appellants argue that under this regulation, the fact that the Union chose to send appellants notice conferred interested party status upon them. Br. for Appellants at 28–30. In essence, appellants argue that Part 601 incorporates a waiver principle into the § 7476 regulatory scheme, thereby creating an additional category of people — notice recipients — who may employ the statutorily provided declaratory judgment remedy. This is a specious claim.

The regulation cited by appellants does not state that any person to whom notice is addressed thereby becomes an interested party entitled to institute a declaratory judgment action. Rather, the regulation merely requires the notice to provide that its recipient is entitled to submit comments on the plan. Nowhere does the regulation suggest that notice confers standing on recipients who are not interested parties under Treas. Reg. § 1.7476–1(b). This construction of the regulations accords with the overall regulatory structure: Treas. Reg. § 1.7476 defines the interested parties under § 7476, while Part 601 simply governs the content of the notice that must be given to those interested parties when plans seek determinations from the IRS. Part 601 acknowledges

that the notice must be given in accordance with the regulations under § 7476. 26 C.F.R. § 601.201(*o*)(3)(xiv). Taken together, §§ 601.201(*o*)(3)(xiv) and (xvi)(*g*) do not suggest that they add a new category of interested parties to those enumerated in § 1.7476.

 Even if Part 601 did appear to contradict the regulations under § 7476 by adding a new category of interested parties, it would not displace or override those regulations. We have previously explained the weight to be accorded the procedural rules of Part 601:

> Part 601 rules differ significantly from the [Treasury] regulations.... Issued by the Commissioner, without need for approval by the Secretary, they serve merely as guidelines for conducting the internal affairs of the agency. The authority of the Commissioner to issue such rules derives from [5 U.S.C. § 301]. As such, the Statement of Procedural Rules is held to be directory, not mandatory in nature.

*Boulez v. Comm'r*, 810 F.2d 209, 215 (D.C.Cir.1987) (citations omitted). By contrast, the Treasury regulations defining "interested parties" are promulgated by the Secretary pursuant to his specific statutory delegation in § 7476(b). And as noted above, under the Supreme Court's decision in *Mead*, Treas. Reg. § 1.7476 is *binding* as written. Part 601, however, does not have the same status under *Mead*, so it surely does not override § 1.7476. Thus, appellants' arguments on this point are meritless.

### III. CONCLUSION

As former employees, appellants are not interested parties as defined by Treas. Reg. § 1.7476–1(b). As such, they lack standing to bring a § 7476 declaratory judgment action. The regulations defining interested parties are valid because they are based on a reasonable construction of the statutory language and because they are rooted in a rational distinction between current and former employees in plan amendment cases. Moreover, the rules governing the content of notice to interested parties do not operate to confer standing on appellants. For these reasons, we affirm the judgment of the Tax Court.