**UNITED STATES of America,
Appellee,**

v.

**Roland HYLTON, Appellant.**

**No. 01–3097.**

United States Court of Appeals,
District of Columbia Circuit.

Argued April 8, 2002.

Decided June 28, 2002.

As Amended on Denial of Rehearing
Aug. 26, 2002.

Luther L. Hajek, appointed by the court, argued the cause for appellant. With him on the briefs was Douglas J. Behr, appointed by the court.

Suzanne Grealy Curt, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Roscoe C. Howard, Jr., U.S. Attorney, John R. Fisher, Elizabeth Trosman, and Mary A. Snow, Assistant U.S. Attorneys.

Before: EDWARDS and TATEL, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge SILBERMAN.

SILBERMAN, Senior Circuit Judge:

Roland Hylton appeals from the district court's entry of judgment and denial of his motion for a new trial based on claimed ineffective assistance of counsel. We agree with Hylton that he is entitled to a new trial.

### I.

This case has a rather twisted procedural history, although the basic facts are straightforward. Hylton appeals from his conviction for conspiring to smuggle cocaine in from Jamaica using young women as couriers. On May 2, 1996, Hylton was arrested at BWI airport while wait-

ing to pick up one of the couriers, who was stopped by customs agents after they discovered cocaine in the heel of her shoe. He was released later that evening after the customs agents seized some physical evidence such as cash and obtained several statements from him. Appellant was again arrested and then indicted on four counts on October 9, 1997. A few days later, on the advice of his then-attorney Jane Norman, Hylton participated in debriefings with Assistant United States Attorney Stephan Best, United States Customs officials, and police detectives. Before the debriefing, and after speaking with his attorney, Hylton signed a "Debriefing Agreement," which provided in relevant part:

> (1) First, except for paragraphs two and three below, no statements made by or other information provided by your client during the "off-the-record" debriefings will be used directly against your client in any criminal proceeding.
>
> (2) Second, the government may make derivative use of and may pursue any investigative leads suggested by any statements made by or other information provided by your client. (This provision is necessary in order to eliminate the necessity for a *Kastigar* hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by your client.)[1]

Hylton gave the government a range of general information as to how he imported drugs from Jamaica as well as more specif-ic information concerning his relationship with his co-conspirator Adrian Wright.

Approximately a month before his scheduled trial in April 1998, Hylton filed a motion before Judge Urbina to exclude evidence derived from his debriefing. Because her involvement in the debriefing sessions required her to testify, Ms. Norman stopped representing Hylton and the court appointed her law partner. After it became apparent that he would have the same conflict, the court appointed Thomas Abbenante. The Judge determined that, although Hylton's statements were voluntary, his waiver of his Fifth Amendment rights was not a "knowing and intelligent" act. (Hylton claimed that his participation was based on his understanding that he would be released.) The government did not appeal from that finding. Both parties, and Judge Urbina, then proceeded on the Debriefing Agreement's assumption that *Kastigar* would govern; Hylton would be entitled to a hearing at which the government would have the burden of showing that none of the evidence it wished to present was derived from Hylton's debriefing. The hearing was avoided, however, because counsel stipulated that the government had independent knowledge of several proposed witnesses but not one of the drug couriers, Cynthia White, whom the government then agreed not to call. The assistant U.S. attorney also indicated that prior to Hylton's debriefing he had not known of Adrian Wright's involvement, but since Wright's whereabouts were unknown and the government did not intend to call him no formal stipulation as to him was entered.

---

**1.** By "*Kastigar,*" the Debriefing Agreement was referring to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), in which the Supreme Court addressed the constitutionality of the federal immunity statute. The Court held that to be constitutional, the statute must afford protec-tion commensurate with that of the Fifth Amendment; therefore, the government must demonstrate that it has made neither direct nor indirect use of immunized statements, but it does not need to confer the broader transactional immunity.

The trial did not go well for the government. The jury found Hylton not guilty of several counts and the jurors hung as to the remainder. The government proceeded to a second trial before Judge Penn. Much of the testimony was the same[2] but, as emphasized by appellant, one significant addition was the testimony of the very Adrian Wright who was the subject of discussion before the first trial. Wright, who before the second trial had pleaded guilty to importing narcotics and entered into a cooperation agreement with the government, testified that he and Hylton had imported between five and fifteen kilos of cocaine in an eleven-month period using young women such as Cynthia White as couriers. Hylton's counsel, Abbenante, did not challenge Wright's testimony. The jury found Hylton guilty of both remaining counts.

After the verdict, a newly appointed counsel moved for a new trial on several grounds including the ineffective assistance of counsel. Hylton claimed Abbenante's major lapse was his failure to object to Wright's testimony since the assistant U.S. attorney had conceded that he did not know of Wright until Hylton's debriefing. At a hearing, the government produced a customs agent who introduced two investigative reports he had drafted prior to Hylton's debriefing which referred to Wright, and Abbenante testified that he did not raise the *Kastigar* issue because he thought one of the couriers had "given up" Wright prior to the debriefing. But Hylton's new counsel proffered a witness who would testify that Wright had agreed to cooperate only after he was confronted with Hylton's debriefing statements be-

cause he felt betrayed and that he had no choice. For reasons not apparent, the witness did not testify, and Judge Penn found that *Kastigar* was not violated because the government had in fact been aware of Wright's role prior to Hylton's debriefing and consequently counsel had not been ineffective in failing to object to Wright's testimony on *Kastigar* grounds.

## II.

Hylton presents us with two issues. He claims that the police lacked probable cause to arrest him on May 2, 1996, and therefore evidence thus obtained (his statements and the cash) should be suppressed, and secondly that his counsel at the second trial was ineffective.[3]

■ The first claim is, to be charitable, insubstantial. It is undisputed that custom agents arrested the courier Janice Thompson at BWI after finding cocaine in the heels of her shoes and that she identified and physically pointed out Hylton as the person who was to pick her up at the airport. Observing this identification, Hylton immediately left the airport and went to his car. Confronted by an agent, he refused to provide identification. That is easily probable cause to arrest appellant. *See United States v. Kayode*, 254 F.3d 204, 209–10 (D.C.Cir.2001).

■ The second claim, by contrast, persuades us; we think appellant did not enjoy effective counsel. We made clear in *United States v. North*, 910 F.2d 843, 855 (D.C.Cir.1990) (*North I*), opinion withdrawn and superseded in part, 920 F.2d 940 (D.C.Cir.1990) (*North II*), that the government has a significant burden when it seeks to prosecute a defendant who has

---

**2.** Jessica Rhones, another drug courier, testified for the first time at the second trial.

**3.** He also claims a right to a new trial based on perjury of a government witness. Since we grant a new trial it is unnecessary to consider this claim.

given immunized testimony.[4] It must demonstrate that witnesses who testified against the defendant were not influenced—"shaped, altered, or affected"—by that information. *North II,* 920 F.2d at 943; *North I,* 910 F.2d at 861. It seems to us rather obvious, under *Kastigar* and *North,* that if Hylton's statements were a cause of Wright's decision to plead and testify against Hylton, Wright's testimony was impermissible even if the government had prior knowledge of Wright's role.

In determining whether Hylton makes out his claim of ineffective assistance of counsel by raising Abbenante's failure to make a *Kastigar* objection to Wright's testimony we follow the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), which obliges a defendant to demonstrate that his "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable."

We agree with Hylton that Abbenante's failure to raise *Kastigar* with respect to Wright was simply inexcusable. The posttrial hearing reveals that Abbenante's decision was not a tactical one but instead rested on a misunderstanding of *Kastigar.* Even if persons in the government "knew" about Wright and that knowledge was sufficient to offset the assistant U.S. attorney's admission, the government was obliged to demonstrate that it made *no* derivative use of Hylton's debriefing statements. And Hylton claims that the government used the debriefing statements to coerce or induce Wright to testify.

It is true that Wright, at trial, testified that he was cooperating because he regretted his previous actions and was hoping to move forward with his life. But Wright was never asked about the effect of Hylton's debriefing statements on his decision. Indeed, even if Abbenante had considered challenging Wright's testimony on that basis he could not have done so on cross-examination without alerting the jury to those very statements of the defendant. This point neatly illustrates that the *Kastigar* hearing and the examination of witnesses at trial have two entirely different functions. At trial both counsel are concentrating on the substance of the witnesses' testimony, but at a *Kastigar* hearing the focus is more narrow, not whether the witness is generally telling the truth but, instead, was he or she influenced by the immunized testimony. Such a hearing obviously must take place outside the jury's presence. In sum, Wright's testimony was undoubtedly damaging to Hylton. Putting the government to its burden to show that Wright was not influenced to testify by exposure to Hylton's debriefing statement was, so to speak, a freebie; it cost the defense nothing and the possible benefit—the exclusion of Wright's testimony—was undoubtedly significant.

There remains the question, how significant? Was Hylton prejudiced? Hylton relies heavily on the fact that he was not convicted in the first trial, which is relevant although not dispositive. *Compare United States v. Williams,* 212 F.3d 1305, 1311 n. 10 (D.C.Cir.2000), *with id.* at 1313 (Silberman, J., dissenting). When assessing prejudice, we look to the full record. *See United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); *United States v. Davis,* 974 F.2d 182, 191 (D.C.Cir.1992). Here, the record

---

4. Although the government did not invoke the federal immunity statute, as discussed in more detail below, we are nonetheless guided by the decisions in *Kastigar* and *North.* The reasoning in *Kastigar* is not confined to cases arising under that statute. *United States v. Kilroy,* 27 F.3d 679, 685 (D.C.Cir.1994).

discloses that Wright's testimony was an integral part of the government's presentation: although the theory of the case did not change from the first to the second trial, Wright's testimony significantly improved the clarity and strength of that presentation. It was thus imperative for counsel to have done all that he could have to prevent that testimony and Hylton's counsel overlooked the most obvious technique.

■ The government, presumably realizing the depth of *Kastigar* water in which it is floundering seeks both indirectly and directly to avoid *Kastigar* altogether. The government's brief appears to challenge Judge Urbina's finding that Hylton's initial waiver was not knowing and intelligent by emphasizing Hylton's educational background. That is simply out of bounds; the government never appealed that ruling, which it could have done prior to trial, and it is much too late to do so now.

The government's more direct—and sophisticated—effort to escape the *Kastigar* framework is its argument that *Kastigar* should not apply to this case because Hylton's statement was unquestionably voluntary whereas *Kastigar* was a ruling prompted by legislation *compelling* witnesses to testify upon a grant of use immunity. It is the government's contention that in a situation such as this one, even if the waiver was not a knowing one, appellant is not entitled to the full *Kastigar* protection against *derivative* use. Instead, he should be treated as he would be if his statements came without the required *Miranda* warning. Under those circumstances, his own statement may not be used against him but derivative use is not barred. *See Oregon v. Elstad,* 470 U.S.

298, 307, 105 S.Ct. 1285, 1292, 84 L.Ed.2d 222 (1985).[5]

■ This is a very interesting argument, but it also comes too late to be considered. Recall that both parties operated under the assumption at the pre-trial proceedings before the first trial that after Judge Urbina ruled that appellant's consent to the debriefing was invalid *Kastigar* governed, and it was in that context that stipulations were made to avoid a *Kastigar* hearing. Again, the government did not appeal Judge Urbina's ruling. So under those circumstances *Kastigar*'s applicability became the law of the case. *Cf. Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C.Cir.1987) (A "legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."). Moreover, the government never even suggested this theory before Judge Penn at the post-second-trial hearing, as counsel conceded at oral argument.

■ The government claims nevertheless that we are entitled to affirm the district judge's denial of the post-trial motion on any ground—including one never even suggested to Judge Penn or Judge Urbina. That is not the law. For decades, we have emphasized that "an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent 'exceptional circumstances.'" *Flynn v. Comm'r of Internal Revenue Service,* 269 F.3d 1064, 1068–69 (D.C.Cir.2001) (quoting *Marymount Hosp., Inc. v. Shala-*

---

5. As a variation on this argument, the government also attempts to cast this case as a failed attempt at plea bargaining and therefore that *Kastigar* should not apply. In support, the government points to *Kilroy,* 27 F.3d 679, in which we concluded that *Kastigar did* apply. In any event, this variation as well comes too late.

*la,* 19 F.3d 658, 663 (D.C.Cir.1994)). The government does not contend that any of those circumstances are present here. To be sure, we have affirmed on a ground that neither the government nor the district court "relied" on, *United States v. Garrett,* 720 F.2d 705, 710 (D.C.Cir.1983), but that does not mean that the argument was presented wholly fresh. The government's reliance on *United States v. Garces,* 133 F.3d 70, 74–76 (D.C.Cir.1998), is also misplaced. There we simply explained that our reasoning "differ[ed] in detail from that of the trial court and from the theories pressed by the government," which did not suggest that the government has a license to present entirely new arguments on appeal. Finally, the government's reliance on *United States v. Tropiano,* 50 F.3d 157, 161 (2d Cir.1995), in which the Second Circuit decided a standing issue not previously raised, is silly—standing goes to our jurisdiction and we have an independent obligation to determine whether a party has standing.

Abbenante's decision not to raise the *Kastigar* issue with respect to Wright's testimony did not fall within the wide range of effective counsel. And that error so tainted the trial as to render suspect its outcome. We therefore reverse the district court's decision to deny Hylton's motion for a new trial and remand for a new trial.

*So ordered.*