United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued April 8, 2002 Decided June 28, 2002 

 No. 01-3097

 United States of America, 
 Appellee

 v.

 Roland Hylton, 
 Appellant

 Appeal from the United States District Court 
 for the District of Columbia 
 (97cr0376)

 Luther L. Hajek, appointed by the court, argued the cause 
for appellant. With him on the briefs was Douglas J. Behr, 
appointed by the court.

 Suzanne Grealy Curt, Assistant U.S. Attorney, argued the 
cause for appellee. With her on the brief were Roscoe C. 
Howard, Jr., U.S. Attorney, John R. Fisher, Elizabeth Tros-
man, and Mary A. Snow, Assistant U.S. Attorneys.

 Before: Edwards and Tatel, Circuit Judges, and 
Silberman, Senior Circuit Judge.

 Opinion for the Court filed by Senior Circuit Judge 
Silberman.

 Silberman, Senior Circuit Judge: Roland Hylton appeals 
from the district court's entry of judgment and denial of his 
motion for a new trial based on claimed ineffective assistance 
of counsel. We agree with Hylton that he is entitled to a new 
trial.

 I.

 This case has a rather twisted procedural history, although 
the basic facts are straightforward. Hylton appeals from his 
conviction for conspiring to smuggle cocaine in from Jamaica 
using young women as couriers. On May 2, 1996, Hylton was 
arrested at BWI airport while waiting to pick up one of the 
couriers, who was stopped by customs agents after they 
discovered cocaine in the heel of her shoe. He was released 
later that evening after the customs agents seized some 
physical evidence such as cash and obtained several state-
ments from him. Appellant was again arrested and then 
indicted on four counts on October 9, 1997. A few days later, 
on the advice of his then-attorney Jane Norman, Hylton 
participated in debriefings with Assistant United States At-
torney Stephan Best, United States Customs officials, and 
police detectives. Before the debriefing, and after speaking 
with his attorney, Hylton signed a "Debriefing Agreement," 
which provided in relevant part:

 (1) First, except for paragraphs two and three below, no 
 statements made by or other information provided by 
 your client during the 'off-the-record' debriefings will be 
 used directly against your client in any criminal proceed-
 ing.
 
 (2) Second, the government may make derivative use of 
 and may pursue any investigative leads suggested by any 
 statements made by or other information provided by 
 your client. (This provision is necessary in order to 
 
 eliminate the necessity for a Kastigar hearing at which 
 the government would have to prove that the evidence it 
 would introduce at trial is not tainted by any statements 
 made by or other information provided by your client.)[1]
 
 Hylton gave the government a range of general information 
as to how he imported drugs from Jamaica as well as more 
specific information concerning his relationship with his co-
conspirator Adrian Wright.

 Approximately a month before his scheduled trial in April 
1998, Hylton filed a motion before Judge Urbina to exclude 
evidence derived from his debriefing. Because her involve-
ment in the debriefing sessions required her to testify, Ms. 
Norman stopped representing Hylton and the court appoint-
ed her law partner. After it became apparent that he would 
have the same conflict, the court appointed Thomas Abben-
ante. The Judge determined that, although Hylton's state-
ments were voluntary, his waiver of his Fifth Amendment 
rights was not a "knowing and intelligent" act. (Hylton 
claimed that his participation was based on his understanding 
that he would be released.) The government did not appeal 
from that finding. Both parties, and Judge Urbina, then 
proceeded on the Debriefing Agreement's assumption that 
Kastigar would govern; Hylton would be entitled to a hear-
ing at which the government would have the burden of 
showing that none of the evidence it wished to present was 
derived from Hylton's debriefing. The hearing was avoided, 
however, because counsel stipulated that the government had 
independent knowledge of several proposed witnesses but not 
one of the drug couriers, Cynthia White, whom the govern-
ment then agreed not to call. The assistant U.S. attorney 

__________
 1 By "Kastigar," the Debriefing Agreement was referring to 
United States v. Kastigar, 406 U.S. 441 (1972), in which the 
Supreme Court addressed the constitutionality of the federal immu-
nity statute. The Court held that to be constitutional, the statute 
must afford protection commensurate with that of the Fifth Amend-
ment; therefore, the government must demonstrate that it has 
made neither direct nor indirect use of immunized statements, but 
it does not need to confer the broader transactional immunity.

also indicated that prior to Hylton's debriefing he had not 
known of Adrian Wright's involvement, but since Wright's 
whereabouts were unknown and the government did not 
intend to call him no formal stipulation as to him was entered.

 The trial did not go well for the government. The jury 
found Hylton not guilty of several counts and the jurors hung 
as to the remainder. The government proceeded to a second 
trial before Judge Penn. Much of the testimony was the 
same2 but, as emphasized by appellant, one significant addi-
tion was the testimony of the very Adrian Wright who was 
the subject of discussion before the first trial. Wright, who 
before the second trial had pleaded guilty to importing nar-
cotics and entered into a cooperation agreement with the 
government, testified that he and Hylton had imported be-
tween five and fifteen kilos of cocaine in an eleven-month 
period using young women such as Cynthia White as couriers. 
Hylton's counsel, Abbenante, did not challenge Wright's testi-
mony. The jury found Hylton guilty of both remaining 
counts.

 After the verdict, a newly appointed counsel moved for a 
new trial on several grounds including the ineffective assis-
tance of counsel. Hylton claimed Abbenante's major lapse 
was his failure to object to Wright's testimony since the 
assistant U.S. attorney had conceded that he did not know of 
Wright until Hylton's debriefing. At a hearing, the govern-
ment produced a customs agent who introduced two investi-
gative reports he had drafted prior to Hylton's debriefing 
which referred to Wright, and Abbenante testified that he did 
not raise the Kastigar issue because he thought one of the 
couriers had "given up" Wright prior to the debriefing. 
But Hylton's new counsel proffered a witness 
who would testify that Wright had agreed to cooperate only 
after he was confronted with Hylton's debriefing statements 
because he felt betrayed and that he had no choice. For 
reasons not apparent, the witness did not testify, and Judge 
Penn found that Kastigar was not violated because the gov-

__________
 2 Jessica Rhones, another drug courier, testified for the first 
time at the second trial.

ernment had in fact been aware of Wright's role prior to 
Hylton's debriefing and consequently counsel had not been 
ineffective in failing to object to Wright's testimony on Kasti-
gar grounds.

 II.

 Hylton presents us with two issues. He claims that the 
police lacked probable cause to arrest him on May 2, 1996, 
and therefore evidence thus obtained (his statements and the 
cash) should be suppressed, and secondly that his counsel at 
the second trial was ineffective.3

 The first claim is, to be charitable, insubstantial. It is 
undisputed that custom agents arrested the courier Janice 
Thompson at BWI after finding cocaine in the heels of her 
shoes and that she identified and physically pointed out 
Hylton as the person who was to pick her up at the airport. 
Observing this identification, Hylton immediately left the 
airport and went to his car. Confronted by an agent, he 
refused to provide identification. That is easily probable 
cause to arrest appellant. See Kayode v. United States, 254 
F.3d 204, 209-10 (D.C. Cir. 2001).

 The second claim, by contrast, persuades us; we think 
appellant did not enjoy effective counsel. We made clear in 
United States v. North, 910 F.2d 843, 855 (D.C. Cir. 1990) 
(North I), opinion withdrawn and superseded in part, 920 
F.2d 940 (D.C. Cir. 1990) (North II), that the government has 
a significant burden when it seeks to prosecute a defendant 
who has given immunized testimony.4 It must demonstrate 
that witnesses who testified against the defendant were not 

__________
 3 He also claims a right to a new trial based on perjury of a 
government witness. Since we grant a new trial it is unnecessary 
to consider this claim.

 4 Although the government did not invoke the federal immunity 
statute, as discussed in more detail below, we are nonetheless 
guided by the decisions in Kastigar and North. The reasoning in 
Kastigar is not confined to cases arising under that statute. United 
States v. Kilroy, 27 F.3d 679, 685 (D.C. Cir. 1994).

influenced--"shaped, altered, or affected"--by that informa-
tion. North II, 920 F.2d at 943; North I, 910 F.2d at 861. It 
seems to us rather obvious, under Kastigar and North, that if 
Hylton's statements were a cause of Wright's decision to 
plead and testify against Hylton, Wright's testimony was 
impermissible even if the government had prior knowledge of 
Wright's role.

 In determining whether Hylton makes out his claim of 
ineffective assistance of counsel by raising Abbenante's fail-
ure to make a Kastigar objection to Wright's testimony we 
follow the standard set forth in Strickland v. Washington, 466 
U.S. 668, 687 (1984), which obliges a defendant to demon-
strate that his "counsel's errors were so serious as to deprive 
[him] of a fair trial, a trial whose result is reliable."

 We agree with Hylton that Abbenante's failure to raise 
Kastigar with respect to Wright was simply inexcusable. 
The post-trial hearing reveals that Abbenante's decision was 
not a tactical one but instead rested on a misunderstanding of 
Kastigar. Even if persons in the government "knew" about 
Wright and that knowledge was sufficient to offset the assis-
tant U.S. attorney's admission, the government was obliged to 
demonstrate that it made no derivative use of Hylton's de-
briefing statements. And Hylton claims that the government 
used the debriefing statements to coerce or induce Wright to 
testify.

 It is true that Wright, at trial, testified that he was 
cooperating because he regretted his previous actions and 
was hoping to move forward with his life. But Wright was 
never asked about the effect of Hylton's debriefing state-
ments on his decision. Indeed, even if Abbenante had consid-
ered challenging Wright's testimony on that basis he could 
not have done so on cross-examination without alerting the 
jury to those very statements of the defendant. This point 
neatly illustrates that the Kastigar hearing and the examina-
tion of witnesses at trial have two entirely different functions. 
At trial both counsel are concentrating on the substance of 
the witnesses' testimony, but at a Kastigar hearing the focus 
is more narrow, not whether the witness is generally telling 

the truth but, instead, was he or she influenced by the 
immunized testimony. Such a hearing obviously must take 
place outside the jury's presence. In sum, Wright's testimo-
ny was undoubtedly damaging to Hylton. Putting the gov-
ernment to its burden to show that Wright was not influenced 
to testify by exposure to Hylton's debriefing statement was, 
so to speak, a freebie; it cost the defense nothing and the 
possible benefit--the exclusion of Wright's testimony--was 
undoubtedly significant.

 There remains the question, how significant? Was Hylton 
prejudiced? Hylton relies heavily on the fact that he was not 
convicted in the first trial, which is relevant although not 
dispositive. Compare United States v. Williams, 212 F.3d 
1305, 1311 n.10 (D.C. Cir. 2000), with id. at 1313 (Silberman, 
J., dissenting). When assessing prejudice, we look to the full 
record. See United States v. Young, 470 U.S. 1, 16 (1985); 
United States v. Davis, 974 F.2d 182, 191 (D.C. Cir. 1992). 
Here, the record discloses that Wright's testimony was an 
integral part of the government's presentation: although the 
theory of the case did not change from the first to the second 
trial, Wright's testimony significantly improved the clarity 
and strength of that presentation. It was thus imperative for 
counsel to have done all that he could have to prevent that 
testimony and Hylton's counsel overlooked the most obvious 
technique.

 The government, presumably realizing the depth of Kasti-
gar water in which it is floundering seeks both indirectly and 
directly to avoid Kastigar altogether. The government's 
brief appears to challenge Judge Urbina's finding that Hyl-
ton's initial waiver was not knowing and intelligent by empha-
sizing Hylton's educational background. That is simply out of 
bounds; the government never appealed that ruling, which it 
could have done prior to trial, and it is much too late to do so 
now.

 The government's more direct--and sophisticated--effort 
to escape the Kastigar framework is its argument that Kasti-
gar should not apply to this case because Hylton's statement 
was unquestionably voluntary whereas Kastigar was a ruling 

prompted by legislation compelling witnesses to testify upon 
a grant of use immunity. It is the government's contention 
that in a situation such as this one, even if the waiver was not 
a knowing one, appellant is not entitled to the full Kastigar 
protection against derivative use. Instead, he should be 
treated as he would be if his statements came without the 
required Miranda warning. Under those circumstances, his 
own statement may not be used against him but derivative 
use is not barred. See Oregon v. Elstad, 470 U.S. 298, 307 
(1985).5

 This is a very interesting argument, but it also comes too 
late to be considered. Recall that both parties operated 
under the assumption at the pre-trial proceedings before the 
first trial that after Judge Urbina ruled that appellant's 
consent to the debriefing was invalid Kastigar governed, and 
it was in that context that stipulations were made to avoid a 
Kastigar hearing. Again, the government did not appeal 
Judge Urbina's ruling. So under those circumstances Kasti-
gar's applicability became the law of the case. Cf. Williams-
burg Wax Museum, Inc. v. Historic Figures, Inc., 810 F.2d 
243, 250 (D.C. Cir. 1987) (A "legal decision made at one stage 
of litigation, unchallenged in a subsequent appeal when the 
opportunity to do so existed, becomes the law of the case for 
future stages of the same litigation, and the parties are 
deemed to have waived the right to challenge that decision at 
a later time."). Moreover, the government never even sug-
gested this theory before Judge Penn at the post-second-trial 
hearing, as counsel conceded at oral argument.

 The government claims nevertheless that we are entitled to 
affirm the district judge's denial of the post-trial motion on 
any ground--including one never even suggested to Judge 
Penn or Judge Urbina. That is not the law. For decades, we 

__________
 5 As a variation on this argument, the government also at-
tempts to cast this case as a failed attempt at plea bargaining and 
therefore that Kastigar should not apply. In support, the govern-
ment points to Kilroy, 27 F.3d 679, in which we concluded that 
Kastigar did apply. In any event, this variation as well comes too 
late.

have emphasized that "an argument not made in the lower 
tribunal is deemed forfeited and will not be entertained 
absent 'exceptional circumstances.' " Flynn v. Comm'r of 
Internal Revenue Service, 269 F.3d 1064, 1068-69 (D.C. Cir. 
2001) (quoting Marymount Hosp., Inc. v. Shalala, 19 F.3d 
658, 663 (D.C. Cir. 1994)). The government does not contend 
that any of those circumstances are present here. To be 
sure, we have affirmed on a ground that neither the govern-
ment nor the district court "relied" on, United States v. 
Garrett, 720 F.2d 705, 710 (D.C. Cir. 1983), but that does not 
mean that the argument was presented wholly fresh. The 
government's reliance on United States v. Garces, 133 F.3d 
70, 74-76 (D.C. Cir. 1998), is also misplaced. There we 
simply explained that our reasoning "differ[ed] in detail from 
that of the trial court and from the theories pressed by the 
government," which did not suggest that the government has 
a license to present entirely new arguments on appeal. Fi-
nally, the government's reliance on United States v. Tropi-
ano, 50 F.3d 157, 161 (2d Cir. 1995), in which the Second 
Circuit decided a standing issue not previously raised, is 
silly--standing goes to our jurisdiction and we have an inde-
pendent obligation to determine whether a party has stand-
ing.

 Abbenante's decision not to raise the Kastigar issue with 
respect to Wright's testimony did not fall within the wide 
range of effective counsel. And that error so tainted the trial 
as to render suspect its outcome. We therefore reverse the 
district court's decision to deny Hylton's motion for a new 
trial and remand for a new trial.

 So ordered.