# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 13, 2015          Decided December 29, 2015

No. 14-7189

AYANNA BLUE,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-01504)

*Natalie A. Baughman* argued the cause for appellant. With her on the brief was *Scott D. Gilbert*.

*Carl J. Schifferle*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellee. With him on the brief were *Karl A. Racine*, Attorney General, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General.

Before: HENDERSON and TATEL, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant Ayanna Blue alleges that while attending a District of Columbia school for emotionally disturbed students, she and a teacher had a consensual sexual relationship—a relationship that led to the birth of a child. Blue seeks damages from the District of Columbia under 42 U.S.C. § 1983, Title IX, and various D.C. tort laws. The district court dismissed her complaint for failure to state a claim. For the reasons set forth in this opinion, we affirm.

## I.

Because this case comes to us at the motion to dismiss stage, "we must accept all factual allegations in the complaint as true." *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 42 (D.C. Cir. 2015). According to the complaint, Robert Weismiller, the teacher who had a sexual relationship with Blue, taught at various schools in the D.C. area for much of the past forty years.

In the mid-1970s, while a gym and driver's education teacher at a public high school in Prince George's County, Maryland, Weismiller "initiated sexual relationships with two students." Second Am. Compl. ¶ 24. Weismiller persuaded "one 16-year-old student . . . to have sex with him at various locations, both on and off of school property." *Id.* He also "had sexual intercourse with a second student" who was "17 years old when the sexual relationship began." *Id.* ¶ 25. "While serving as the student's driver education teacher, Weismiller on multiple occasions drove the student to a motel, where they had sex." *Id.* After two of her classmates "informed the student's parents that they had seen her with Weismiller," the girl's parents "informed the principal of what the classmates had seen, and demanded that the principal take action." *Id.* The complaint says nothing about what the

principal or the school district did in response to the parents' complaint. Weismiller stopped working at the school in 1978.

Several years later, in 1984, while teaching at a public middle school in Prince William County, Virginia, Weismiller "sexually assaulted two eighth grade students." *Id.* ¶ 26. Weismiller's "misconduct toward the students continued into their ninth grade year, when he was transferred to the [students' high school]." *Id.* A lawsuit filed in 1986 regarding this misconduct named as defendants "Weismiller, the Prince William County School Board, and several school officials." *Id.* Weismiller "was fired . . . as a result of this lawsuit." *Id.*

In the late 1990s, after a brief stint at another school, Weismiller started working at a middle school in the Fairfax County, Virginia, public school system. *Id.* ¶ 28. About a year into Weismiller's tenure, one of the plaintiffs in the Prince William County lawsuit, who happened to be working for the Fairfax schools, saw Weismiller at a school event, "contacted the Human Resources Department for Fairfax County, informed officials about her lawsuit against Weismiller, and was told that he would be terminated from his teaching position immediately." *Id.* ¶ 27. Although the complaint contains no information about whether the school system followed through on its promise, it does indicate that Weismiller stopped working for the school system that year. *Id.* ¶ 28.

Setting the stage for this litigation, the District of Columbia Public Schools (DCPS) hired Weismiller in 2008 to teach at the Transition Academy at Shadd, a school for emotionally disturbed students. Ayanna Blue, then eighteen years old, was enrolled in one of Weismiller's classes. Throughout the fall of 2008, Weismiller made advances toward Blue, including telling her that "[i]f [he] were 30 years

younger, [he] would marry [her]," "wink[ing] at [her] in class[,] and kiss[ing] her on numerous occasions." *Id.* ¶ 15 (internal quotation marks omitted). Around November 19, Weismiller "drove [Blue] home from school, and the two had sexual intercourse in his car." *Id.* ¶ 19. Before their relationship ended in April 2009, "numerous incidents occurr[ed] in Weismiller's classroom during the lunch period, in his car, and at [Blue's] home." *Id.* ¶ 20. Although Blue never told school officials about the relationship, she did inform school personnel in December 2008 that she believed she was pregnant, and they sent her to the health office to take a pregnancy test, which came back negative. Later, Blue did become pregnant. After Blue's daughter was born in late 2009, *id.* ¶ 21, Blue, her daughter, and Weismiller took a paternity test, which "[was] positive, indicating a 99.99% probability that Weismiller is the baby's father," *id.* ¶ 22. The complaint does not allege that the relationship was ever involuntary.

Earlier, in May 2009, after DCPS learned that Blue was pregnant but before she had the baby, it initiated an investigation of Weismiller. *Id.* ¶ 29. Weismiller denied that he had engaged in a sexual relationship with Blue, *id.* ¶ 30, but every witness DCPS interviewed—including teachers, an educational aide, Weismiller's classroom aide, and a clinical psychologist—stated that they had seen the two alone together in Weismiller's classroom or had heard rumors that the two were having a sexual relationship, *id.* ¶¶ 31–36. One witness saw the two alone together in Weismiller's classroom "during the lunch period, with the lights off." *Id.* ¶ 36. "Despite these first-hand accounts, DCPS, at the close of its investigation, acquitted Weismiller of any misconduct." *Id.* ¶ 38. Five months later, in October 2009, DCPS terminated Weismiller as part of a "system-wide reduction in force." *Id.* ¶ 14.

In 2010, Blue filed suit in the U.S. District Court for the District of Columbia, asserting numerous claims against Weismiller; the then-Chancellor of DCPS, Michelle Rhee; DCPS; and the District of Columbia. Blue has since settled her claims against Weismiller and dropped her claims against DCPS and Rhee, so only her claims against the District of Columbia remain at issue. The district court granted the District's motion to dismiss these claims for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

On appeal, Blue pursues her claims against the District under section 1983, Title IX, and various D.C. tort laws. Our review is de novo. *Tuaua v. United States*, 788 F.3d 300, 302 (D.C. Cir. 2015).

## II.

Accepting the complaint's allegations as true, one might think that this case is relatively easy. DCPS hired Weismiller even though he had a history of preying on children in two neighboring school systems. DCPS then assigned him to teach at a school for special education students, where he engaged in a sexual relationship with a student, Ayanna Blue. Given this background, most people would reasonably assume that Blue should have an opportunity to prove her case. But unfortunately for her, a series of judicially created and statutory obstacles, all binding on this court, stand in her path.

### Section 1983

To state a claim for relief against a municipality under section 1983, a plaintiff must satisfy two requirements: she must plead "a predicate constitutional violation" and that "a custom or policy of the municipality caused the violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Blue claims that the District's actions "violated [her] rights under the Due Process Clause of the Fifth Amendment

to be free from conduct that violates her bodily integrity," Second Am. Compl. ¶ 87, by allowing Weismiller, a teacher, to engage her, an eighteen-year-old student, in a consensual sexual relationship. The district court found it unnecessary to determine whether a right to be free from such a relationship exists because, even assuming it does, it concluded that Blue failed to allege that a district policy caused the violation. *Blue v. District of Columbia*, 850 F. Supp. 2d 16, 25, 29 (D.D.C. 2012); *see also Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978). We agree.

This circuit has identified several ways in which a plaintiff may allege a municipal policy or custom. Specifically, she may point to (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker*, 326 F.3d at 1306 (citations omitted). On appeal, Blue pursues only one of these theories: that under certain circumstances, a single decision by a municipal official with final policymaking authority can constitute a municipal policy. *Id.* (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–30 (1988) (plurality opinion)). In order for a municipality to be held liable for the single decision of a final policymaker, that official must have demonstrated "deliberate indifference to the risk that a violation of a particular constitutional or statutory right [would] follow the decision." *Board of County Commissioners v. Brown*, 520 U.S. 397, 411 (1997). Blue alleges that two District decisions satisfied this standard: the decision to hire Weismiller without

conducting a proper background investigation and the decision not to terminate Weismiller after DCPS investigated his sexual relationship with Blue.

The second of Blue's theories merits only brief attention. Although the district court rejected Blue's failure-to-fire claim for multiple reasons, we need address only one: that the District's decision to retain Weismiller after the investigation could not have caused the specific injury that Blue relied upon as the basis for her section 1983 claim—the sexual relationship with Weismiller. *Blue*, 850 F. Supp. 2d at 28. This is correct. Blue's relationship with Weismiller ended in April 2009, a month before DCPS initiated its investigation. The District's May decision to retain Weismiller thus could not have affected the no-longer-existing relationship.

Blue presents a second variation of her failure-to-fire claim—one that would, if valid, avoid the causation problem. She contends that the District's single decision not to reprimand Weismiller after the District investigated the relationship demonstrates a municipal policy of ignoring sexual abuse by teachers. But Blue has cited no decision by this circuit, nor are we aware of one, that supports such a theory of municipal liability. As Blue points out, other circuits have recognized that theory, but in the cases Blue cites, the municipality failed to respond to improper actions by numerous municipal officials. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (citing actions by numerous prison guards); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) (describing "repeated acts of abuse . . . by several officers in several episodes"); *Owens v. Haas*, 601 F.2d 1242, 1245 (2d Cir. 1979) (recounting the severe beating of a prisoner by "[a]pproximately seven guards"). This case is quite different. Not only does it involve the alleged misbehavior of only one municipal employee, but, more

important, DCPS's May 2009 investigation concluded that Weismiller never had a sexual relationship with Blue. The District therefore had no reason to fire Weismiller.

Blue's second asserted basis for a municipal policy—the District's failure to properly screen Weismiller before hiring him—warrants somewhat more analysis. Blue contends that the District's failure to properly screen Weismiller qualified as a municipal policy because it was a single decision by a final policymaker. The district court rejected this theory because Blue failed to "allege[] . . . that the decision to hire Weismiller without an adequate background check was made by a final municipal policymaker." *Blue*, 850 F. Supp. 2d at 27. Instead, Blue alleged only that "[the] District has 'a custom, policy or practice of failing to adequately investigate the backgrounds of its teachers before hiring them.'" *Id.* (quoting Second Am. Compl. ¶ 82).

We agree with the district court that Blue's assertion is insufficient to support a claim that the District, in failing to properly screen Weismiller, acted pursuant to a municipal policy actionable under section 1983. As the Supreme Court made clear in *Ashcroft v. Iqbal*, when reviewing the sufficiency of a complaint, a court must first "tak[e] note of the elements a plaintiff must plead to state [the] claim" to relief, 556 U.S. 662, 675 (2009), and then determine whether the plaintiff has pleaded those elements with adequate factual support to "state a claim to relief that is plausible on its face," *id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). Blue has failed to satisfy *Iqbal*'s first step.

Section 1983 plaintiffs have several ways to allege a municipal policy, each with its own elements. If the plaintiff fails to identify the type of municipal policy at issue, the court

would be unable to determine, as required by *Iqbal*'s second step, whether the plaintiff had provided plausible support for her claim. Although the court could try to surmise which theory of municipal liability has the strongest support in the complaint, this is not our role. It therefore follows that to state a valid claim against a municipality under section 1983, a plaintiff must plead the elements of the relevant type of municipal policy.

Under this standard, Blue's inadequate screening claim fails because, as she concedes, she never indicated the contours of any type of municipal policy. At most, the complaint suggests that the District made a serious mistake in hiring Weismiller, just as other school districts have done in the past. Although, if true, this would be distressing, the complaint does not allege that the District has a policy of failing to properly screen employees.

We draw support for our position from the decisions of the two other circuits that have considered this issue. In *Santiago v. Warminster Township*, the plaintiff alleged that the municipality was liable based on a single decision by the chief of police. 629 F.3d 121, 125 (3d Cir. 2010). The Third Circuit affirmed the district court's dismissal of the case, finding that the complaint failed to adequately plead municipal liability because it never alleged that the police chief had final policymaking authority. *Id.* at 135. The court explained that the plaintiff had "to plead in some fashion that [the police chief] had final policy making authority, as that is a key element of a *Monell* claim." *Id.* at 135 n.11. The Seventh Circuit has similarly held that a plaintiff must plead that a final municipal policymaker made the decision that caused the violation. *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) ("[I]t must first be alleged adequately that a defendant is a final policymaker.

Only then can a court proceed to the question of whether the single act or decision of that defendant constituted municipal policy."). In other words, in order for the district court to assess whether Blue stated a facially plausible complaint, Blue needed to assert the elements of the type of municipal policy that caused her injury. Blue failed to do so.

## Title IX

Blue next argues that the District denied her the benefits of an education on the basis of sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., when it failed to end Weismiller's sexual relationship with her. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Id.* § 1681(a). In *Gebser v. Lago Vista Independent School District*, the Supreme Court held that a student can recover damages under Title IX for sexual harassment by a teacher when three elements exist: (1) an appropriate official at the school, *i.e.*, one with authority to institute corrective measures, (2) had actual notice of the harassment and (3) demonstrated deliberate indifference to the harassment. 524 U.S. 274, 290 (1998). The district court determined that Blue had failed to demonstrate any of the three. *Blue*, 850 F. Supp. 2d at 31–36. Although Blue insists that she has established all three elements, we need address only the second, actual notice.

In *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, the Supreme Court interpreted the actual notice requirement to mean that school officials must have been aware of "known acts of sexual harassment by a teacher." 526 U.S. 629, 641 (1999). The Court further held that such acts must have come to the school officials' attention while the

harassment was ongoing. *See id.* at 642–43 (explaining that to be liable, the school officials' deliberate indifference must have caused the discrimination).

Blue has failed to satisfy the *Davis* standard. Nowhere in her complaint did she allege that anyone—much less an appropriate official—knew of any acts of sexual harassment while the harassment was ongoing. She did allege that school officials had actual notice "as shown by the pregnancy test she took at the school's request in December 2008 and through interviews of teachers and staff who had seen Weismiller and [Blue] alone together in his classroom." Second Am. Compl. ¶ 94. Neither suffices. Because Blue never alleged that she revealed to school officials at the time of the pregnancy test that Weismiller was the potential father, school officials could not have known that Weismiller was sexually harassing her. As for the teachers and staff seeing Weismiller and Blue alone together, even assuming, as Blue alleges, that Weismiller was sexually harassing her in the classroom, *Davis* requires that the sexual harassment be "known," and Blue has failed to allege that anyone *knew* sexual harassment was occurring in Weismiller's classroom. Blue has therefore failed to state a claim to relief under Title IX.

## D.C. Tort Claims

This brings us, finally, to Blue's tort claims against the District. The district court dismissed these claims, finding that Blue had failed to comply with D.C. Code § 12-309, *Blue*, 850 F. Supp. 2d at 36–38, which requires that a person bringing a claim against the District must "within six months after the injury . . . give[] notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." Section 12-309 further provides that "[a] report in writing by the Metropolitan

Police Department, in regular course of duty, is a sufficient notice." The D.C. Court of Appeals has "repeatedly . . . held that 'compliance with the statutory notice requirement is mandatory,' and that § 12-309 'is to be construed narrowly against claimants.'" *Owens v. District of Columbia*, 993 A.2d 1085, 1088 (D.C. 2010) (quoting, respectively, *Pitts v. District of Columbia*, 391 A.2d 803, 807 (D.C. 1978), and *Brown v. District of Columbia*, 853 A.2d 733, 736 (D.C. 2004)). The D.C. Court of Appeals has also held that the "statutory exception to formal notice [within section 12-309] . . . is limited to police reports." *Campbell v. District of Columbia*, 568 A.2d 1076, 1078 (D.C. 1990).

Conceding that she failed to provide notice to the mayor within six months of her injury, Blue nonetheless argues that section 12-309's notice requirement has been satisfied because DCPS investigated her allegations, meaning that the District had actual notice of her injury. This theory, however, runs counter to longstanding D.C. Court of Appeals precedent, which makes clear not only that the notice requirement is "mandatory," but also that it must be "construed narrowly against claimants." *Owens*, 993 A.2d at 1088. Emphasizing the strictness of this requirement, the D.C. Court of Appeals has even found that a plaintiff failed to satisfy section 12-309 when she gave oral notice to the city. *Pitts*, 391 A.2d at 806 (explaining that oral notice of the injury was "contrary to both the statute and the case law of this jurisdiction"). Under D.C. law, then, it is not enough that the District has knowledge; that knowledge must come in writing from the claimant.

Alternatively, seeking to take advantage of section 12-309's police report exception, Blue argues that she is entitled to discover whether a police report about the incident exists or whether the police assisted in drafting DCPS's May 2009

investigative report. But because Blue failed to advance this argument in the district court, she has forfeited it here. *Flynn v. Commissioner of Internal Revenue Service*, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001) ("[A]n argument not made in the lower tribunal is deemed forfeited and will not be entertained absent 'exceptional circumstances.'").

## III.

For the foregoing reasons, we affirm.

*So ordered.*