Anitra POLLARD, as Guardian and Conservator of Kevin Witherspoon, A Mentally Retarded and Incapacitated Individual, and Lakeisha Witherspoon, Appellants

v.

DISTRICT OF COLUMBIA, et al., Appellees

No. 16–7075

United States Court of Appeals, District of Columbia Circuit.

FILED ON: AUGUST 1, 2017

Roy Carleton Howell, Esquire, Law Office of Roy Carleton Howell, Washington, DC, for Appellants.

Loren L. Alikhan, Karl A. Racine, Carl James Schifferle, Todd Sunhwae Kim, Office of the Attorney General, District of Columbia Office of the Solicitor General, Washington, DC, for Appellees.

Before: ROGERS and MILLETT, Circuit Judges, and SENTELLE, Senior Circuit Judge.

### JUDGMENT

This case comes before the court on appeal from the United States District Court for the District of Columbia's order dismissing Anitra Pollard's and Lakeisha Witherspoon's complaint seeking damages from District of Columbia governmental defendants under 42 U.S.C. § 1983 and District of Columbia law. This action was considered on the briefs of the parties. The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the order of the United States District Court for the District of Columbia be affirmed.

Kevin Witherspoon is an adult resident of the District of Columbia, who is intellectually disabled. Anitra Pollard is his sister and guardian, and Lakeisha Witherspoon is the sister with whom Kevin Witherspoon resides. Kevin (through Pollard) and Lakeisha Witherspoon filed suit alleging that District of Columbia police officers and the District itself committed a number of constitutional and District-law torts when Kevin Witherspoon was arrested for his participation in a drug "buy and bust." A drug "buy and bust" is an undercover operation in which an individual is asked to purchase drugs for an undercover officer

and then arrested for that drug purchase. The district court dismissed the case, and we affirm.

On October 21, 2011, Officers Hampton Durham and Christopher Hall, who were in plain clothes and driving an unmarked car, spoke with Kevin Witherspoon as he was walking to a corner store. *Pollard v. District of Columbia*, 191 F.Supp.3d 58, 64 (D.D.C. 2016). During that conversation, the Officers convinced Witherspoon to get into the unmarked vehicle with Officer Durham. *Id.*; *see also* Second Am. Compl. ¶¶ 34–35. Officer Durham then drove to an area of known drug activity, and provided Witherspoon with cash. *Pollard*, 191 F.Supp.3d at 64. At Officer Durham's request, Witherspoon took the cash and, by himself, entered a house and made two separate drug purchases, one for marijuana and one for cocaine. *Id.* District officers then arrested Kevin Witherspoon. *Id.*

After his arrest, Witherspoon was transported to the District of Columbia jail and held for less than twenty-four hours in the general inmate population. *Pollard*, 191 F.Supp.3d at 64. Witherspoon claims that he sustained an injury and suffered violent threats. *Id.* Witherspoon was not indicted or prosecuted for the drug purchases. *Id.* Nevertheless, after returning home, Kevin Witherspoon alleges that he was branded in the neighborhood as a police informant, and he and his sister, Lakeisha Witherspoon, were subjected to death threats and vandalism. *Id.*

▮ Kevin and Lakeisha Witherspoon brought a ten-count complaint against the District of Columbia, the District's police department, and individual police officers (collectively, "the District Defendants"). Specifically, the second amended complaint (which is the relevant complaint here) alleged:

- Count I—The police officers endangered Kevin Witherspoon by engag-

ing him in a drug "buy and bust," in violation of the Fourth and Fifth Amendments. Second Am. Compl. ¶¶ 55–56.

- Count II—The police officers falsely arrested Kevin Witherspoon, in violation of the Fourth Amendment. *Id.* ¶¶ 69, 72.

- Count III—The Police Department unlawfully took Kevin Witherspoon's property, in violation of the Fifth Amendment. *Id.* ¶ 82.

- Count IV—The police officers made false reports against Kevin Witherspoon, in violation of the Fourth and Fifth Amendments. *Id.* ¶¶ 94, 96.

- Count V—The District endangered Kevin Witherspoon by placing him in the general population at the D.C. jail, in violation of the Fourth and Fifth Amendments. *Id.* ¶¶ 106, 107.

- Count VI—The District failed to protect Kevin Witherspoon, in violation of the Fourth and Fifth Amendments. *Id.* ¶¶ 117, 120–121.

- Count VII—The District failed to train police officers causing harm to Kevin Witherspoon, in violation of the First, Fourth, and Fifth Amendments. *Id.* ¶ 131.

- Count VIII— The District's failure to train police officers harmed Kevin Witherspoon, in violation of District of Columbia law. *Id.* ¶¶ 145–146.

- Count IX—The District endangered Lakeisha Witherspoon, in violation of the Fifth Amendment. *Id.* ¶¶ 151, 153, 156.

- Count X—The District failed to train police officers, causing harm to Lakeisha Witherspoon, in violation of District of Columbia law. *Id.* ¶¶ 161–

162.[1]

The District Defendants moved for dismissal of all of the constitutional claims, seeking summary judgment on Counts I, II, and IV, FED. R. CIV. P. 56, and dismissal of Counts III, V, VI, VII, and IX for failure to state a claim, FED. R. CIV. P. 12(b)(6). *See Pollard*, 191 F.Supp.3d at 63. The district court granted both of the District Defendants' motions and, having disposed of all the federal claims in the case, declined to exercise supplemental jurisdiction over the District-law tort claims (Counts VIII and X), dismissing them without prejudice. *Id.*[2]

We review the district court's dismissal of Counts V, VI, VII, and IX for failure to state a claim de novo. *Harris v. District of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015). Likewise, we review the district court's grant of summary judgment to the District Defendants on Counts I, II, and IV de novo. *Morris v. McCarthy*, 825 F.3d 658, 667 (D.C. Cir. 2016). In reviewing the Rule 12(b)(6) dismissal, we accept as true all facts in the complaint and construe all factual inferences in the light most favorable to Kevin and Lakeisha Witherspoon. *See Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017). Similarly, in reviewing the grant of summary judgment, we take the facts and all reasonable inferences to be drawn from them in the light most favorable to the Witherspoons. *See Chenari v. George Washington Univ.*, 847 F.3d 740, 744 (D.C. Cir. 2017).

The district court properly dismissed Counts I, II, and IV of the complaint because the police officers are entitled to qualified immunity for those claims. "[Q]ualified immunity protects police officers from suit under 42 U.S.C. § 1983 unless they have violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Corrigan v. District of Columbia*, 841 F.3d 1022, 1029 (D.C. Cir. 2016) (quoting *Fox v. District of Columbia*, 794 F.3d 25, 29 (D.C. Cir. 2015)). The Witherspoons bore the burden of demonstrating both that the officers "violated a statutory or constitutional right," and that the right was " 'clearly established' at the time." *Redmond v. Fulwood*, 859 F.3d 11, 13 (D.C. Cir. 2017) (quoting *Taylor v. Reilly*, 685 F.3d 1110, 1113 (D.C. Cir. 2012), and *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)).

We may begin and end the qualified immunity analysis with either prong of its test. *See Redmond*, 859 F.3d at 13 (citing *Taylor*, 685 F.3d at 1113); *see also Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Importantly, a right is "clearly established" only if its " 'contours [are] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating" the asserted constitutional right. *Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Plumhoff v. Rick-*

1. For the first time on appeal, the Witherspoons assert that the District Defendants' conduct violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Because those statutory claims are not mentioned in the complaint and were never raised in district court, they are forfeited. *See Flynn v. Commissioner of the Internal Revenue Serv.*, 269 F.3d 1064, 1068–1069 (D.C. Cir. 2001).

No "exceptional circumstances" warrant deviating from that general rule here. *Id.*

2. The Witherspoons have made no argument at all on appeal challenging the district court's dismissal of the Fifth Amendment Takings Clause claim (Count III) or the district court's decision not to exercise supplemental jurisdiction over Counts VIII and IX, so we do not address those aspects of the district court's decision.

ard, —— U.S. ——, 134 S.Ct. 2012, 2023, 188 L.Ed.2d 1056 (2014)).

The Witherspoons allege that the police officers were aware of Kevin Witherspoon's intellectual disability and, as a result, violated the Constitution by involving him in an undercover drug purchase, arresting him, and filing a police report that omitted mention of his disability. Assuming, as we must at this procedural juncture, that the officers knew of Kevin Witherspoon's intellectual disability, Witherspoon did not have a clearly established constitutional right not to be arrested after he twice independently entered a building and purchased illegal drugs and twice returned with those drugs to Officer Durham. The Witherspoons cite nothing, and we have not found anything, in Supreme Court precedent, our own circuit case law, or other circuits' decisions that prohibits officers from involving an intellectually disabled individual in a drug "buy and bust" either categorically or under these particular circumstances. Nor does any case law cited by the Witherspoons, or that we have uncovered, mandate a finding of entrapment because Kevin Witherspoon was intellectually disabled, even assuming the quite-debatable proposition that a finding of entrapment would have defeated probable cause to arrest. Cf. Humphrey v. Staszak, 148 F.3d 719, 724 (7th Cir. 1998) ("Entrapment is not part of our Fourth Amendment probable-cause-to-arrest analysis. * * * [P]robable cause to arrest is not necessarily negated by a defendant's successful assertion at trial of an entrapment defense."). Accordingly, Counts I, II, and IV of the complaint were properly dismissed.[3]

The remaining constitutional challenges focus on the District's alleged indifference to Kevin Witherspoon's disability when involving him in the drug buy and bust (Count VII), the District's temporary placement of Kevin Witherspoon in the general prison population at the District of Columbia jail after his arrest (Count V), and the District's failure to protect the Witherspoons from local community members after the arrest when community members labeled him an informant (Counts VI and IX).

■ Counts V and VI fail because the allegations are directed at the District of Columbia under a municipal liability theory. To establish municipal liability, the Witherspoons had to allege that the District had a policy or custom, and that that policy or custom is what caused the violation of their constitutional rights. See, e.g., Monell v. Department of Social Servs. of N.Y.C., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); Doe v. District of Columbia, 796 F.3d 96, 105 (D.C. Cir. 2015) ("To impose liability on a local government for the torts of an employee, a plaintiff must prove that 'action pursuant to official municipal policy' caused his or her injury.") (citation omitted); see also Second Am. Compl. ¶¶ 106–128. Nothing in Counts V or VI of the Witherspoons' second amended

---

**3.** The second amended complaint names some individual officers in the remaining federal counts—Counts V–VII and X—although those counts allege only claims of municipal liability against the District. To the extent any of the remaining federal counts might be construed as being asserted against an individual officer, they too are foreclosed by our qualified-immunity analysis.

complaint indicates in any way that an official policy or custom concerning the treatment of individuals with disabilities is what led to Kevin Witherspoon's overnight detention in the general population or caused the Witherspoons' post-detention difficulties with other community members. *See* Second Am. Compl. ¶¶ 106–128.

■ Count VII alleges that the District acted with deliberate indifference in failing to train its officers to engage appropriately with citizens with intellectual disabilities. To press a municipal failure-to-train claim, the Witherspoons had to show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see also Atchinson v. District of Columbia*, 73 F.3d 418, 421 (D.C. Cir. 1996) (plaintiffs asserting a failure to train must show that "the alleged inadequate training 'represents city policy,' and that the failure to train amounts to deliberate indifference to the rights of the allegedly injured plaintiffs") (alteration and citations omitted; quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. 1197). It will not suffice simply to allege "that a single officer was inadequately trained," or that a training policy was negligently administered. *Atchinson*, 73 F.3d at 421; *see City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197 ("It may be, for example, that an otherwise sound program has occasionally been negligently administered."). That is because even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197.

The Witherspoons' failure-to-train count ultimately fails because they do not allege that any policymaker was deliberately indifferent to an apparent need for additional training that would have prevented Kevin Witherspoon's participation in the drug "buy and bust," especially given his active and independent involvement in the drug purchases. *Cf. Johnson v. District of Columbia*, 734 F.3d 1194, 1200 (D.C. Cir. 2013) (for a deliberate-indifference claim, "class members would have to show at least that the District had actual or constructive notice of unconstitutional strip search practices"). That is to say, the Witherspoons do not make any plausible factual allegations that District officers previously engaged any other intellectually disabled person in a drug "buy and bust" operation resulting in injury, have a pattern or custom of engaging in such practices, or have an official policy of insufficiently training officers about engaging with individuals with intellectual disabilities. Pointing to Kevin Witherspoon's individual experience does not by itself evidence either a recurring problem or any gaps in District training, let alone a governmental policy of failing to train. *Cf. Blue v. District of Columbia*, 811 F.3d 14, 19 (D.C. Cir. 2015) (holding that a plaintiff failed to sufficiently allege a failure-to-fire municipal liability claim where plaintiff's allegations relied solely on the "alleged misbehavior of only one municipal employee"). The facts of this case, by themselves, do not raise such a clear constitutional concern as to make it "patently obvious that [the District] could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). The District cannot be deliberately indifferent to an allegedly injurious practice of which the Appellants fail to allege the District had any knowledge.

The Witherspoons rely on *Schorr v. Lemoyne*, 243 F.Supp.2d 232 (M.D. Pa. 2003), but that case simply spotlights the fatal gaps in the Witherspoons' complaint. In *Schorr*, the complaint made the critical allegations that the Witherspoons' complaint omits. For example, Schorr alleged "that for many years' it [was] known by law enforcement agencies in general, and defendants in particular, that a substantial percentage of police encounters are with persons who have * * * mental illness, and that dealing with such persons requires the taking of special precautions designed * * * to avoid the provocation of violence." Report and Recommendation at 3–4, *Schorr v. Lemoyne*, 243 F.Supp.2d 232 (M.D. Pa. 2003), ECF No. 63. Schorr further contended that "easily implemented, effective training on how to respond to emotionally disturbed and mentally ill persons has been available to the law enforcement community for over twenty years," *id.* at 4, but had not been implemented by the borough. Schorr, in short, alleged the critical elements of a municipal failure to train claim; the Witherspoons did not.

Count IX, which is Lakeisha Witherspoon's claim of state of endangerment, is derivative of Count VII's claim that the District's failure to train endangered Kevin Witherspoon, and thus it fails for the same reasons.

For the foregoing reasons, we affirm the district court's judgment dismissing the case.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

Rogers, Circuit Judge, concurring:

I join the court in affirming the judgment dismissing the complaint. I write separately only to explain why I conclude that appellants failed to state a claim for which relief may be granted in Count VII, based on the District government's alleged failure to train its police officers on how to engage with persons with intellectual disabilities. This allegation presents a difficult issue and is insufficient in my opinion only in light of the limited availability of municipal failure-to-train claims as rearticulated by the Supreme Court in *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011), and the modern pleading requirements of *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," as is the case here. *Connick*, 131 S.Ct. at 1359. Only if a failure to train amounts to " 'deliberate indifference' to the rights of its inhabitants," such that it can "be properly thought of as a city 'policy or custom,' " is it "actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Consequently, a plaintiff must allege facts that show "city policymakers [were] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 131 S.Ct. at 1360. This " 'ordinarily' " requires that a plaintiff show "[a] pattern of similar constitutional violations by untrained employees." *Id.* (quoting *Bryan Cty.*, 520 U.S.

at 409, 117 S.Ct. 1382). The Supreme Court, nonetheless, has left open "the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 1361 (discussing *City of Canton*, 489 U.S. at 390 & n.10, 109 S.Ct. 1197); *cf. Atchinson v. District of Columbia*, 73 F.3d 418, 423 (D.C. Cir. 1996).

Unlike Counts V and VI, in which appellants failed to make any allegations regarding a municipal policy or practice, *see* Second Am. Compl. ¶¶ 106–28, Count VII alleges that the District of Columbia exhibited "[d]eliberate indifference in failing to train and re-train" its police officers with respect to their interactions with individuals with intellectual disabilities, *id.* at ¶ 131, and makes repeated references to "systemic flaws," including "[i]ncidents of endangerment, false arrest and detention" of individuals with intellectual disabilities, *id.* at ¶ 133. Bare allegations of this kind may have been sufficient in this court in the past. Indeed, in *Atchinson*, 73 F.3d at 423, this court "reject[ed] the [District government's] argument that the complaint's use of the phrase 'deliberate indifference' without 'any facts or even generalized factual allegations' regarding such alleged indifference renders the complaint inadequate." Observing that the then-in-effect model forms included in the Federal Rules of Civil Procedure "permit a plaintiff simply to allege a state of mind without providing any factual basis for that allegation," the court concluded that the plaintiff's "mere allegation of deliberate indifference is sufficient." *Id.*; *see also Warren v. District of Columbia*, 353 F.3d 36, 39–40 (D.C. Cir. 2004). But the Supreme Court has since made clear that a party may not make such " 'general allegation[s]' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687, 129

S.Ct. 1937; *cf. Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). The complaint here fails to make any non-conclusory allegations that show a pattern of violations that would have put the District government on notice.

Nor am I convinced that the allegations establish that appellants' case falls within "[*City of*] *Canton*'s hypothesized single-incident liability," *Connick*, 131 S.Ct. at 1361, which was limited to circumstances in which it would be "plainly obvious to the city policymakers" that constitutional violations would ensue absent additional training, *City of Canton*, 489 U.S. at 390 n.10, 109 S.Ct. 1197. In *City of Canton*, the Supreme Court observed that a city could be held liable if it failed to train police officers who it has armed with firearms to arrest fleeing felons "in the constitutional limitations on the use of deadly force." *Id.* This, in contrast, is not a case in which it is clear that "city policymakers know to a moral certainty" recurring constitutional violations will result from not further training police officers in how to identify and engage with individuals with intellectual disabilities. *Id.* Of course, this is "not [to] assume that [the police] will always make correct … decisions or that guidance … would not assist [them]" in such interactions. *Connick*, 131 S.Ct. at 1363. "But showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability." *Id.*

Accordingly, I concur in holding that Count VII cannot survive a motion to dismiss for failure to state a claim.